IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
08/17/2016

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ATINUM MIDCON I, LLC, | § | Case No. 16-33645 (MI) |
| | § | |
| Debtor. | § | |

**ORDER (I) AUTHORIZING THE
RETENTION AND EMPLOYMENT OF PLS, INC.
AS SALES ADVISOR AND SALES AGENT FOR THE DEBTOR AND
DEBTOR IN POSSESSION PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a),
(II) WAIVING CERTAIN TIME-KEEPING REQUIREMENTS,
AND (III) GRANTING RELATED RELIEF**
[This Order Relates to the Application at Docket No. 12]

Upon the application (the "Application")[1] of the above-captioned debtor and debtor in possession (the "Debtor") for entry of an order (this "Order"): (a) authorizing the Debtor to retain and employ PLS, Inc. ("PLS") as its sales advisor and sales agent pursuant to sections 327 and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Bankruptcy Rules") pursuant to the terms and subject to the conditions of the Engagement Letter; (b) waiving and modifying certain of the time keeping requirements of Bankruptcy Rule 2016(a), the Trustee Guidelines and any other guidelines regarding submission and approval of fee applications; and (c) granting related relief, all as more fully described in the Application; and the Court having jurisdiction over this matter; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157; and the Court having determined that the notice of the

---

[1] Each capitalized term used but not otherwise defined herein shall have the meaning ascribed to such term in the Application or Engagement Letter, as applicable.

HOU:3705750.4

Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other or further notice need be provided; and the Court having determined that the employment of PLS is necessary and in the best interest of the estate and its creditors; and the Court being satisfied based on the statements in the Wise Declaration that PLS does not hold or represent any entity having an interest adverse to the interests of the Debtor's estate or of any class of creditors or equity security holders and is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code; and upon all of the proceedings had before this Court, and after due deliberation and good and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Debtor is authorized to retain and employ PLS as its sales advisor and sales agent in this chapter 11 case, pursuant to the terms and subject to the conditions set forth in the Engagement Letter attached hereto as Exhibit 1.

2. Except to the extent set forth herein, the Engagement Letter, including, without limitation, the Fee and Expense Structure, is approved pursuant to section 328(a) of the Bankruptcy Code, and the Debtor is authorized to pay, reimburse, and indemnify PLS in accordance with the terms and conditions of, and at the times specified in, the Engagement Letter.

3. PLS shall file applications for allowance of compensation and reimbursement of expenses pursuant to and in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, such Bankruptcy Rules or Local Bankruptcy Rules as may then be applicable, and any other applicable orders and procedures of this Court; *provided, however*, that notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, any order of this Court, the Trustee Guidelines, any other guidelines

regarding submission and approval of fee applications, and any other applicable orders or procedures of the Court, PLS's professionals shall not be required to keep time records.

4. The fees and expenses payable to PLS pursuant to the Engagement Letter shall be subject to review pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code, except by the U.S. Trustee, who, for the avoidance of doubt, shall retain all rights to respond or object to PLS's fee applications on all grounds, including, but not limited to, reasonableness pursuant to section 330 of the Bankruptcy Code.

5. The indemnification provisions included in the Engagement Letter are approved, subject during the pendency of this chapter 11 case to the following modifications:

    a. Subject to the provisions of subparagraph (b) below, the Debtor is authorized to indemnify the PLS Parties in accordance with the Engagement Letter for any claim arising from, related to, or in connection with their performance of the services described in the Engagement Letter; provided, however, that the PLS Parties shall not be indemnified for any claim arising from services other than the services provided under the Engagement Letter, unless such services and the indemnification therefor are approved by this Court;

    b. Notwithstanding anything to the contrary in the Engagement Letter, the Debtor shall have no obligation to indemnify any person for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen primarily from that person's bad faith, gross negligence or willful misconduct, or (ii) for a contractual dispute in which the Debtor alleges breach of PLS's obligations under the Engagement Letter unless this Court determines that indemnification would be permissible pursuant to applicable law or (iii) settled prior to a judicial determination as to sub-clauses (i) or (ii) above, but determined by this Court, after notice and a hearing, to be a claim or expense for which that person should not receive indemnity under the terms of the Engagement Letter as modified by this Order;

    c. If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this chapter 11 case (that order having become a final order no longer subject to appeal), or (ii) the entry of an order closing this chapter 11 case, PLS believes that it is entitled to the payment of any amounts by

the Debtor on account of the Debtor's indemnification obligations under the Engagement Letter (as modified by this Order), PLS must file an application before this Court and the Debtor may not pay any such amounts before the entry of an order by this Court approving the payment; provided, however, that for the avoidance of doubt, this subparagraph (c) is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses for indemnification, and not a provision limiting the duration of the Debtor's obligation to indemnify PLS.

6. The Success Fee provision of the Engagement Letter (Section 4) is clarified as follows: In the event of a sale to Wells Fargo Bank N.A., as administrative agent for the first lien lenders ("Wells Fargo"), and to Wells Fargo alone via a credit bid, PLS shall receive a Success Fee of two hundred thousand dollars ($200,000). Under this scenario, PLS will be compensated in cash in connection with the closing of such credit bid. Otherwise, the Success Fee set forth in Section 4 of the Engagement Letter based on Total Transaction Value shall apply and payment shall be made in accordance with the terms of the Engagement Letter.

7. To the extent that there may be any inconsistency between the terms of the Application, the Wise Declaration, the Engagement Letter, and this Order, the terms of this Order shall govern.

8. The Debtor is authorized and empowered to take all actions necessary to effectuate the relief granted by this Order.

9. Notwithstanding the possible applicability of Bankruptcy Rules 6004, 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

10. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order. Further, notwithstanding anything to the contrary in the Engagement Letter, the Court shall retain exclusive jurisdiction during the pendency of this

HOU:3705750.4

case to resolve any disputes arising from or related to the Engagement Letter and PLS's retention pursuant to the Application and this Order.

Dated:  August 17, 2016  
Houston, Texas

_____  
THE HONORABLE MARVIN ISGUR  
UNITED STATES BANKRUPTCY JUDGE

HOU:3705750.4

# EXHIBIT 1



Marketing & Transaction Services
One Riverway Ste. 2500
Houston, TX 77056
Phn: 713-650-1212 & 713-658-1922
www.plsx.com

June 20, 2016

Mr. Young Lee
President & CEO
Atinum Energy Investments, LLC
333 Clay St Ste 700
Houston, TX 77002
Phone: 713-328-0206 & Fax: 713-328-0280

## EXCLUSIVE AGENCY AND MARKETING AGREEMENT

This letter (the "Agreement") confirms the understanding and agreement between PLS Inc.("PLS"), Atinum MidCon I, LLC ("SELLER"), that PLS will act as the SELLER's exclusive agent in the sale of certain non-operated working interest assets in Kansas & Oklahoma (defined as "the Assets") described on the attached Exhibit "A". The approval of this Agreement is subject to Bankruptcy Court (the "Court") approval and the terms are as follows:

1. **SERVICES.** PLS will provide all marketing and transaction services as may be customarily provided by PLS in connection with marketing engagements of this type and as otherwise reasonably requested by SELLER. PLS will diligently organize, package and solicit potential purchasers of the Assets and submit to SELLER all offers received. Additional services to be provided by PLS are outlined in Exhibit "B" attached hereto.

2. **TERM.** The term of the Agreement shall begin on the Effective Date and end on September 30, 2016 (the "Term"). However, the Term shall extend on a month-by-month basis after September 30, 2016 unless terminated by SELLER, with no less than 14 days written notice to PLS. Provided, however, that for a period of twelve (12) months following the date of termination of the Agreement, PLS shall be entitled to and shall receive its Success Fee as defined herein if the Assets are sold by SELLER to a third party who was solicited by PLS during the Term and who received a copy of the teaser. In the event of a sale via a credit bid, and for a period of twelve (12) months following such sale, should the credit bidder sell the assets to any person, corporation, company or entity whatsoever that was solicited by PLS during the Term and who received a copy of the teaser, then PLS shall be entitled to and shall receive one-half of the Success Fee as defined herein, less two hundred thousand dollars ($200,000), to be paid by credit bidder.

3. **RETAINER.** SELLER agrees to pay PLS a non-refundable, upfront retainer of twenty-four thousand dollars ($24,000); plus, a monthly retainer of six thousand nine hundred dollars ($6,900) per

Initial: _____ YL

PLS – Atinum MidCon I, LLC
Exclusive Agency and Marketing Agreement

month beginning July 1st. Payment is due on the first of every month and prorated for partial months for the term of this Agreement. The first installment shall be due upon execution of this Agreement and monthly thereafter by check or wire transfer into a bank account as directed by PLS.

4. **SUCCESS FEE.** At the closing of any sale subject to the Agreement, SELLER agrees to pay to PLS a Success Fee of sixty-five hundredths of one percent (0.65%) of the Total Transactional Value (see below for definition), with a minimum Success Fee of two hundred thousand dollars ($200,000). In the event of a sale via a credit bid, PLS shall receive a Success Fee of two hundred thousand dollars ($200,000). Under this scenario, PLS will be compensated by the credit bidder. Further, if, and only if, a sale is closed with a party other than by credit bid, the retainer payments set forth in paragraph 3 above shall be credited against the Success Fee.

   a. *Calculation*: For example, if the Total Transactional Value is one hundred million dollars ($100,000,000), PLS shall receive a Success Fee of six hundred fifty thousand dollars ($650,000).

   b. *Definition*: The Total Transactional Value shall mean the sum of: (i) cash or cash equivalents received by SELLER at Closing of the sale of the Assets; (ii) any marketable securities received by SELLER as part of the transaction; (iii) any deposits paid by any purchaser in advance of closing that are credited against the Total Transactional Value at closing or forfeited by a purchaser who fails to close; (iv) the value of any additional cash or equivalents due to be paid to the SELLER within 36 months of closing; (v) any non-marketable securities received by SELLER as part of the transaction; (vi) the amount of any offset or reduction to the Total Transactional Value attributable to the buyer's assumption of any liability of the SELLER, including but not limited to, any assumption of debt, environmental liability, well plugging and abandonment liability. For clarity, PLS notes that in this engagement, Seller's objective is a cash transaction in which case Total Transaction Value will be equal to cash at closing plus any assumption of liabilities.

   c. *Court Attendance*: PLS agrees to provide ten (10) hours of court attendance on behalf of the SELLER. Should meetings with lawyers and court hearings exceed ten (10) hours of total time then PLS will bill the SELLER two hundred fifty dollars ($250) per additional hour.

   d. *Non-Sale*: In the event of a non-sale, PLS shall receive reimbursement for all engineering and technical services provided during the course of this process. The hourly rate assigned to engineering work is two hundred and fifty dollars per hour ($250/hour) and for technical services it is one hundred dollars per hour ($100/hour); plus, a Termination Fee of twenty-five thousand dollars ($25,000).

   e. Other than the Fees described above, PLS shall not be entitled to and shall not receive any other expense reimbursement whatsoever from SELLER.

2   Initial: _____

PLS – Atinum MidCon I, LLC
Exclusive Agency and Marketing Agreement

5. **CONTINUED MARKETING.** In the event the marketing process is stalled or delayed, PLS agrees to remarket the assets for no charge except the ongoing $6,900 per month Retainer and Success Fee described herein.

6. **PAYMENT.** The Success Fee shall be paid in cash to PLS by wire transfer at Closing. Any such sums not paid when due shall accrue interest from the date due until paid at a rate equal to the lesser of: (a) prime rate as announced from time to time by Amegy Bank of Texas, plus four percent (4%), or (b) the maximum permissible rate under applicable law.

7. **AUTHORITY.** It is expressly agreed that SELLER is solely responsible for any decision made regarding the sale of the Assets.

8. **CONFIDENTIALITY.** PLS agrees to keep confidential during the Term, and for twelve (12) months after the expiration or any termination of the Agreement, all material nonpublic information provided to it by SELLER and agrees not to use such information other than in connection with the services to be performed by PLS pursuant to the Agreement. In addition PLS agrees, as requested and appropriate to use Confidentiality Agreements as requested by the Seller or the Court.

9. **LIABILITY, INDEMNIFICATION & ARBITRATION.** Neither party shall be liable to the other as the result of any alleged breach of this agreement for any damages exceeding the actual, direct, foreseeable damages incurred by the non-breaching party, together with costs and expenses, including attorneys' fees, incurred in recovering such damages; and each party hereby expressly waives any right that it may otherwise have to recover consequential, exemplary, punitive, statutory, special, and/or indirect damages, or damages of any type other than actual, direct, foreseeable damages resulting from breach of this Agreement. SELLER hereby agrees to indemnify and hold harmless PLS and its affiliates, and their respective owners, officers, directors, employees, agents and representatives (collectively the "PLS Parties") from any and all losses or liabilities incurred by any of the PLS Parties, including, but not limited to, attorneys' fees and costs incurred in defending any claim against any of the PLS Parties, resulting directly or indirectly from SELLER providing to any of the PLS Parties Information relating to the Assets that is used or communicated to third parties by any of the PLS Parties in the performance of PLS's services hereunder. Notwithstanding the forgoing, SELLER shall not be responsible for any losses, claims, damages, liabilities or expenses or any PLS Parties to the extent, and only to the extent, that it is finally and judicially determined that they are due primarily to such PLS Party's bad faith, willful misconduct or gross negligence. In addition, the SELLER may not withhold PLS's fees in the event of any litigation between the SELLER and any potential purchaser (in advance of a closing) or final buyer. PLS represents that this indemnification provision is consistent and customary with indemnification provisions in non-bankruptcy PLS engagements.

10. **JURISDICTION.** The Agreement shall be governed by the laws of the State of Texas without regard to its conflicts of law principles, and the venue for any judicial proceeding concerning the validity, enforcement, construction or interpretation of the Agreement shall in the Southern District of Texas with the Court.

3   Initial: _____ YL _____

PLS – Atinum MidCon I, LLC
Exclusive Agency and Marketing Agreement

**11. EFFECTIVE DATE.** The date of this Agreement is June 20th, 2016.

AGREED

PLS, Inc.

By: _____   Date: 6-20-16
Name: Ronald W. Wise
Title: Managing Director

Atinum MidCon I, LLC

By: _____   Date: 6/20/16
Name: YOUNG LEE
Title: Vice President

4   Initial: _____ YL

PLS – Atinum MidCon I, LLC
Exclusive Agency and Marketing Agreement

# Exhibit "A"

**OKLAHOMA & KANSAS PROPERTIES**
>1,500-Total Wells. ~1,180-Active.
<u>MISSISSIPPIAN LIME</u>
Mostly Horizontal Wells. Some Vertical.
523,000 Gross Acres; 65,000 Net Acres (90% HBP).
Varying NonOperated WI & NRI.
2016 Gross Production: ~28,000 BOPD, 380 MMCFD & 20,000 BBLD NGLs
<u>2016 Net Production: ~ 2,100 BOPD, 26.0 MMCFD & 1,600 BBLD NGLs</u>
**2016 Net Cashflow: ~$2,800,000/Mn**
Mostly Operated By: SandRidge & CHK
**PP 5949**

5  Initial: _____ YL

PLS – Atinum MidCon I, LLC
Exclusive Agency and Marketing Agreement

# Exhibit "B"

Recap Select Duties and Responsibilities

PLS shall:

1. Assist and advise Seller's personnel in preparation of the Sale Packages defined as both aggregation of public and seller provided data, preparation of relevant property data bases, creation of informal and formal sale brochures, offering memorandums and sale information.

2. Advertise Seller's divestiture package in PLS reports and on PLS' website;

3. Prepare any and all Offering Memorandum, Introductory/Teaser letter(s) and/or Sales Brochure to provide to prospective purchasers; Handle copying, reproduction and dissemination of sales materials;

4. Creation and establishment of an Internet Data Room for access by potential purchasers;

5. Manage distribution of sales material to potential purchasers and promote access to the Internet Data Room at www.plsx.com;

6. As needed, handle Seller approved Confidentiality Agreements (as required; or requested) and execution of applicable CA's with potential purchasers;

7. Aggressively call and solicit the Sale Package to prospective purchasers and screen Seller;

8. Coordinate in-house prospect presentations by the Seller to any potential purchasers interested in learning more about the Assets potential through a personal prospect pitch;

9. Handle all questions to the degree possible and/or at least facilitate Q&A between potential purchasers and the Seller;

10. Negotiate commercial terms of offers received, as required;

11. Negotiate aggressively on the behalf of the Seller and assist the Seller in choosing the purchaser; and

12. Work with Seller's personnel to insure a smooth and successful closing.

6   Initial: [signature]  YL